MAINPRIZE *v.* BATES

5-3765                                398 S. W. 2d 894

Opinion delivered February 14, 1966

*Hodges & Hodges,* for appellant.

*Gus Causbie,* for appellee.

ED. F. McFADDIN, Justice. From a judgment in favor of plaintiffs-appellees, the defendant-appellant brings this appeal. Two matters occurring in the litigation are now urged for reversal.

In 1958 Bates Motor Company (a partnership composed of appellees, Messrs. Bates and Freeman) sold a power unit to the appellant, O. O. Mainprize. Part of the purchase price was paid in cash, and the unpaid balance of $1,150.32 was secured by a chattel mortgage on the power unit. Bates Motor Company was in business in Arkansas; and Mainprize lived in Missouri; so the chattel mortgage was on a Missouri form and was duly recorded in that State.

Mr. Mainprize made several payments on the secured indebtedness and also had repair work done from time to time on the power unit. Mr. Mainprize returned the power unit to Bates Motor Company, but without giving any explanation mutually understood between the parties. After some delay, Bates Motor Company sold the power unit at advertised sale under claimed provisions of the chattel mortgage; and on June 1, 1961, Bates Motor Company filed this action against Mainprize for the claimed balance due of $667.67.

By answer, Mainprize denied owing any balance on the power unit; and by cross complaint[1] sought $3,000.00 damages for breach of express and implied warranties in regard to the power unit. For reasons best known to the parties, the cause was not tried until October 22, 1964, when it was presented to the Circuit Judge sitting as a jury. The main issue in the trial re-

---

[1] The Ford Motor Company was named as a cross-defendant, but there is nothing in the record to show any service on that Company; and the Ford Motor Company is not listed in the judgment as ever having been a party to the litigation.

lated to alleged defects in the power unit and to Mainprize's claim for breach of warranty. The Circuit Court judgment was in favor of appellees, Bates *et al,* for the amount sued for; and on this appeal only two points are urged by the appellant:

"I. The Court erred in refusing to quash the writs of garnishment.

"II. The Court erred in refusing to hold the sale void because the appellee did not have the property appraised."

I.

*The Garnishment Matter.* The first point relates to the refusal of the Court to quash certain writs of garnishment. The following schedule of dates gives the background for appellant's insistence on this point:

6/1/61    Original complaint filed and summons issued. Service was obtained in Missouri on July 20, 1961.

6/1/61    Allegations and interrogatories filed and garnishment issued on Cherokee Village Company. The garnishee answered on August 2, 1961.

7/18/61   Allegations and interrogatories filed and garnishment issued against Hidden Valley Company; and this garnishee answered on August 28, 1961.

1/1/62    The service on defendant of the original summons of June 1, 1961 was quashed because there had been much delay in obtaining service.

1/2/62    New summons issued against defendant, and served on January 19, 1962.

3/29/62  Defendant, saving his objections, filed answer and counter-claim.

4/3/63  Defendant moved that the writs of garnishment against Cherokee Village and Hidden Valley Company be quashed because the service of summons of 6/1/61 on defendant had been quashed.

2/5/65  Judgment rendered, reciting as to the writs of garnishment, ''and plaintiffs are authorized to proceed under the garnishments as issued herein toward satisfaction of the recovery herein.''

The appellant insists that since the service on him of the summons of June 1, 1961 was quashed, therefore the writs of garnishment issued on June 1, 1961 and July 18, 1961 should likewise be quashed. In other words, the position of the defendant is that until he was validly served with process, no writ of garnishment could be validly served. We find no merit in this point. Our statute on the commencing of a cause of action (Ark. Stat. Ann. § 27-301 [Repl. 1962]) reads in part: ''A civil action is commenced by filing in the office of the clerk of the proper court a complaint and causing a summons to be issued thereon, and placed in the hands of the sheriff of the proper county or counties.'' Thus, on June 1, 1961, when Bates *et al* filed this action against Mainprize and placed the summons in the hands of the officer, the action was ''commenced.''

Our statute on garnishment before judgment (Ark. Stat. Ann. § 31-501 [Repl. 1962]) says in part: ''In all cases where any plaintiff may begin an action in any court of record . . . . and such plaintiff shall have reason to believe that any other person is indebted to the defendant . . . . such plaintiff may sue out a writ of garnishment . . . .'' The writ of garnishment before judgment may be sued out ''in all cases where any plaintiff may begin an action.'' *Bates et al* began their

action on June 1, 1961, and they could obtain a writ of garnishment on that date or thereafter. There is no question in this case as to the allegations, bonds, interrogatories, etc. regarding the garnishment. The sole insistence of the appellant is that when the Court quashed the service obtained on the defendant of the summons dated June 1, 1961, such quashing *ipso facto* rendered the writs of garnishment void.

We find no merit in this contention. Our case of *Roach* v. *Henry,* 186 Ark. 884, 56 S. W. 2d 577, is in point. In that case, action was filed and summons issued against the defendant on September 6, 1932. Personal service could not be obtained on the defendant so a warning order was issued at a subsequent date. A writ of garnishment was issued and served on September 6, 1932, before the warning order was issued. We held that the failure to obtain personal service on the defendant on September 6, 1932 did not render void the writ of garnishment, saying: "The mere fact that the defendant was not served would not render the garnishment void."

## II.

*The Matter Of Appraisement.* As previously mentioned, Mr. Mainprize returned the power unit to Bates *et al* without any explanation being mutually understood between the parties. Bates *et al,* purporting to act under the chattel mortgage, sold the power unit for $525.00 and credited that amount on what was due to Bates *et al* by Mainprize. With the said credit allowed, this action was filed against Mainprize for $667.67 for balance claimed due on the mortgage indebtedness, plus also an unpaid open account.

In the course of the trial Mr. Bates testified, without objection, as to how this balance of $667.67 was calculated. The existence of the chattel mortgage under which Bates acted was not questioned. Its terms were not denied, and it was not thought to be of sufficient importance to be introduced in evidence. Mr. Bates testi-

fied that he posted notices of the proposed sale of the power unit, and Mr. Mainprize admitted that he was told of the sale. There was some slight evidence by Mr. Bates that "our shop appraised it" (referring to the power unit). As to whether there was any formal appraisement, and as to whether the Missouri mortgage required any formal appraisement, are matters that were not considered important. The Trial Court found "that in January 1960, plaintiffs, after having advertised and giving notice of intention to do so, sold the said unit under the aforesaid 'Missouri mortgage' for $525.00, defendant being aware of the pendency and time of said sale; . . . ."

Now, on appeal, the appellant claims that in selling the power unit under the mortgage Bates did not comply with Ark. Stat. Ann. §§ 51-1112 *et seq.* (1947) as regards appraisal and sale of property under a mortgage. This point appears to us to be an afterthought. The big issue in the Trial Court was the warranty of the power unit. No one seemed to have even regarded the provisions of the mortgage to be of any importance. The parties selected the issues in the trial below; and we cannot here retry the case on other issues.

Affirmed.